**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| RAVGEN, INC., | |
| Plaintiff, | Civil Action No. 20-cv-1646-RGA-JLH |
| v. | JURY TRIAL DEMANDED |
| ARIOSA DIAGNOSTICS, INC., ROCHE SEQUENCING SOLUTIONS, INC., ROCHE MOLECULAR SYSTEMS, INC., AND FOUNDATION MEDICINE, INC., | |
| Defendants. | |

**PLAINTIFF RAVGEN INC.'S BRIEF IN OPPOSITION TO**
**ARIOSA DIAGNOSTICS, INC.'S, ROCHE SEQUENCING SOLUTIONS, INC.'S, AND**
**ROCHE MOLECULAR SYSTEMS, INC.'S MOTION TO DISMISS RAVGEN, INC.'S**
**FIRST AMENDED COMPLAINT**

Dated: April 12, 2021

John M. Desmarais (admitted *pro hac vice*)
Kerri-Ann Limbeek (admitted *pro hac vice*)
Jamie L. Kringstein (admitted *pro hac vice*)
Brian D. Matty (admitted *pro hac vice*)
Michael Ling (admitted *pro hac vice*)
Deborah J. Mariottini (admitted *pro hac vice*)
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401
jdesmarais@desmaraisllp.com
klimbeek@desmaraisllp.com
jkringstein@desmaraisllp.com
bmatty@desmaraisllp.com
mling@desmaraisllp.com
dmariottini@desmaraisllp.com

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff Ravgen, Inc.*

# **TABLE OF CONTENTS**

**Pages**

Introduction ........................................................................................................................... 1

Nature And Stage Of The Proceedings .......................................................................... 2

Summary Of The Argument ............................................................................................ 2

Factual Background .......................................................................................................... 3

Legal Standards ................................................................................................................ 6

Argument ........................................................................................................................... 7

I.   Defendants Do Not Dispute That They Were Aware Of The Patents-in-Suit Years Before This Lawsuit ........................................................................................ 8

II.  Ravgen Plausibly Alleges Defendants' Knowledge That Its Genetic Test Infringed And Supports Its Pleading With Ample Factual Allegations. ............... 8

III. Ravgen Plausibly Alleges Induced Infringement, Including Defendants' Knowledge Of Infringement ....................................................................... 12

IV.  Ravgen Plausibly Alleges Willful Infringement, Including Defendants' Knowledge Of Infringement ...................................................................... 16

V.   Conclusion ......................................................................................................... 19

## <u>TABLE OF AUTHORITIES</u>

<u>Pages</u>

**Cases**

*3Shape A/S v. Align Tech., Inc.*,
No. 18-886-LPS-CJB, 2019 WL 1416466 (D. Del. Mar. 29, 2019).............................. 10, 14, 16

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)................................................................................................................... 2

*Bayer Healthcare LLC v. Baxalta, Inc.*,
989 F.3d 964 (Fed. Cir. Mar. 1, 2021)..................................................................................... 18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007)................................................................................................................... 2

*Boston Sci. Corp. v. Nevro Corp*,
415 F. Supp. 3d 482 (D. Del. 2019)......................................................................................... 17

*CG Tech. Dev., LLC v. William Hill U.S. Holdco, Inc.*,
404 F. Supp. 3d 842 (D. Del. 2019)......................................................................................... 17

*Chalumeau Power Sys. LLC v. Alcatel-Lucent*,
No. 11-1175-RGA, 2012 WL 6968938 (D. Del. July 18, 2012) .............................................. 13

*CoolTVNetwork.com, Inc. v. Facebook, Inc.*,
No. 19-292-LPS-JLH, 2019 WL 4415283 (D. Del. Sept. 16, 2019) ....................................... 13

*Courtesy Prods., L.L.C. v. Hamilton Beach Brands, Inc.*,
73 F. Supp. 3d 435 (D. Del. 2014)........................................................................................... 15

*Dynamic Data Techs., LLC v. Brightcove Inc.*,
No. 19-1190-CFC, 2020 WL 4192613 (July 20, 2020)............................................................ 17

*Global-Tech Appliances, Inc. v. SEB S.A.*,
563 U.S. 754 (2011)............................................................................................................. 6, 14

*Grove Digital, Inc. v. Jam City, Inc.*,
No. 1:18-cv-01331-RGA, 2019 WL 351254 (D. Del. Jan. 29, 2019) ...................................... 15

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
136 S. Ct. 1923 (2016)............................................................................................................... 7

*In re Bill of Lading Transmission and Processing Sys. Patent Litig.*,
681 F.3d 1323 (Fed. Cir. 2012) ........................................................................................ passim

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
    C.A. No. 18-452-WCB, 2019 WL 330515 (D. Del. Jan. 25, 2019) .................................. passim

*Malvern Panalytical, Inc. v. TA Instruments-Waters, LLC*,
    No. 19-2157-RGA, 2020 WL 8225650 (D. Del. May 5, 2020).................................................. 15

*Novozymes North Am., Inc. v. Danisco US Inc.*,
    No. 1:19-cv-01902-JDW, D.I. 21 (D. Del. Feb. 12, 2020) ...................................................... 11

*SIPCO, LLC v. Streetline, Inc.*,
    No. 16-830-RGA, 2018 WL 762335 (D. Del. Feb. 7, 2018)..................................................... 13

*Sunoco Partners Marketing & Terminals L.P. v. Powder Springs*
    *Logistics, LLC*,
    No. 17-1390-LPS-CJB, 2019 WL 8641303 (D. Del. Aug. 7, 2019) ................................ passim

*Univ. of Mass. Med. Sch. v. L'Oréal S.A*,
    No. 17-868-CFC-SRF, 2018 WL 5919745 (D. Del. Nov. 13, 2018) ................................ 11, 14

*Valinge Innovation AB v. Halstead New England Corp.*,
    C.A. No. 16-1082-LPS-CJB, 2018 WL 2411218 (D. Del. May 29,
    2018) ................................................................................................................................... 10, 13

*WBIP, LLC v. Kohler Co.*,
    829 F.3d 1317 (Fed. Cir. 2016) ............................................................................................... 7

**Statutes**

35 U.S.C. § 271(a) ........................................................................................................................... 5

35 U.S.C. § 271(b) ........................................................................................................................... 6

35 U.S.C. § 284............................................................................................................................... 7

## INTRODUCTION

Plaintiff Ravgen, Inc. ("Ravgen") was founded by Dr. Ravinder Dhallan, the inventor of several United States patents in the field of genetic testing and genetic disorder detection, including U.S. Patent Nos. 7,332,277 and 7,727,720 (collectively, the "Patents-in-Suit").  D.I. 20 ("FAC") ¶¶ 15, 25-39.  Leading peer-reviewed medical journals lauded Dr. Dhallan's work on his inventions as laying the foundation for the development of accurate non-invasive prenatal diagnostic and cancer surveillance tests.  *Id.* ¶¶ 21-23; FAC Exs. 18-19 (*Journal of the American Medical Association* editors describing the "profound clinical implications" of Dr. Dhallan's invention "for prenatal diagnosis and cancer surveillance"); FAC Exs. 20-21 (peer reviewers at *The Lancet* journal stating that Dr. Dhallan's innovative test "opens a new era in prenatal screening").  In fact, Ravgen's lauded inventions for preparing samples for analysis and detecting free nucleic acids claimed in the Patents-in-Suit were so innovative and important that the defendants in this case— like their competitors in the market—adopted those technologies for their own non-invasive tests for detecting genetic abnormalities, including the Harmony Prenatal Test.  FAC ¶¶ 54-64.

Defendants Ariosa Diagnostics, Inc. ("Ariosa"), Roche Sequencing Solutions, Inc. ("RSS") and Roche Molecular Systems, Inc. ("RMS") (collectively, "Defendants") seek to dismiss Ravgen's claims for induced and willful infringement by demanding more than what is required at the pleading stage.  *See* D.I. 24 ("Motion").  At bottom, Defendants' Motion rests on the assertion that Ravgen has not plausibly alleged facts showing that Defendants had pre-suit knowledge of infringement of the Patents-in-Suit.  But Defendants repeatedly make three fundamental errors in their arguments:  (1) they ignore large sections of relevant factual allegations in the FAC, (2) they fail to address the full scope of Ravgen's factual allegations collectively and in context, and (3) they focus on what is required to ultimately ***prove*** Ravgen's claims, not on what is merely required to ***plausibly allege*** those claims.  When those errors are corrected, Ravgen's

1

FAC pleads far more than what is required for its induced and willful infringement claims at this stage, including detailed factual allegations demonstrating Defendants' extensive pre-suit knowledge of the Patents-in-Suit and their infringement.

## NATURE AND STAGE OF THE PROCEEDINGS

Ravgen filed this patent infringement lawsuit on December 3, 2020 against Ariosa, RSS, RMS, and Foundation Medicine, Inc. for their infringement of the Patents-in-Suit. *See* D.I. 1. On January 29, 2021, Ariosa, RSS, and RMS moved to dismiss certain claims in Ravgen's complaint. *See* D.I. 12. On February 19, 2021, Ravgen filed its First Amended Complaint. *See* FAC. Defendants then filed a second motion to dismiss on March 19, 2021. *See* Motion. Defendants' Motion requests dismissal of Ravgen's induced and willful infringement but does not challenge Ravgen's direct infringement claims against Defendants. *See id.* at 7, 12.

## SUMMARY OF THE ARGUMENT

Ravgen's allegations in support of its claims for induced and willful infringement are anything but boilerplate or conclusory, contrary to Defendants' mischaracterizations. Ravgen's FAC contains detailed, specific factual allegations regarding Defendants' extensive awareness of the Patents-in-Suit extending back years before this case. Those allegations include detail regarding multiple different ways in which Defendants developed their knowledge of the Patents-in-Suit and of their infringement.

The pleading standards only require Ravgen to allege sufficient "factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)). The FAC is replete with factual allegations supporting Ravgen's claims and puts the Defendants on notice as to the nature of Ravgen's allegations. Those allegations are sufficient, as Ravgen is not required to ***prove*** its claims for induced and willful infringement at this stage but rather need only ***plausibly allege***

2

facts to support those claims.  *In re Bill of Lading Transmission and Processing Sys. Patent Litig.*, 681 F.3d 1323, 1339 (Fed. Cir. 2012).

Ravgen's FAC plausibly alleges that Defendants were aware of the Patents-in-Suit for years, cited the Patents-in-Suit in their own patent applications and in invalidity proceedings at the PTAB, communicated with Ravgen regarding its inventive technology, and actively litigated in the genetic testing field, all while continuing to commercialize their infringing genetic tests.  Those allegations, taken collectively and in context of Ravgen's FAC as a whole, plausibly allege the knowledge of infringement element on which Defendants' Motion rests.  Ravgen's allegations are more than sufficient, and the Motion should be denied.

## FACTUAL BACKGROUND

Dr. Dhallan founded Ravgen in September 2000 to provide "state of the art genetic testing that will enrich the lives of its patients."[1]  FAC ¶ 15.  After substantial research, Dr. Dhallan conceived and patented a method for improving non-invasive prenatal genetic testing.  *Id.* ¶¶ 19–22.  Dr. Dhallan's inventions received widespread notoriety, including publications in multiple renowned medical journals and coverage by well-known news outlets.  *Id.* ¶¶ 21–24.

Defendants are medical diagnostics companies that are incorporated in this District and that conduct business in this District.  *Id.* ¶¶ 3-5, 12-14.  Defendants market the Harmony Prenatal Test, which is a non-invasive prenatal test for detecting genetic abnormalities during pregnancy.  *Id.* ¶¶ 54-55, 57.  Defendants also market cell-free DNA collection tubes that are used to gather blood samples for the Harmony Prenatal Test.  *Id.* ¶ 56.  Defendants provide instructions, for example to healthcare providers, directing users to collect blood samples in collection tubes

---

[1] Defendants' snide characterization of Ravgen's activities as "limited to a recent patent-litigation campaign" (Motion at 3) is incorrect.  Ravgen continues to use Dr. Dhallan's patented inventions in its own commercial non-invasive prenatal tests.

specifically tailored for isolating cell-free DNA, such as Defendants' cell-free DNA collection tubes or Streck cell-free DNA collection tubes.  *Id.* ¶ 58.  Defendants' cell-free DNA collection tubes and Streck cell-free DNA collection tubes both include an agent that inhibits cell lysis, and thus the blood samples collected for the Harmony Prenatal Test using those tubes contain an agent that inhibits cell lysis.  *Id.* ¶¶ 60-62.  The blood samples are processed to analyze isolated fetal cell-free DNA present in the samples to detect chromosomal and other genetic abnormalities.  *Id.* ¶¶ 63-64.

Defendants were aware of the Patents-in-Suit years before this lawsuit, as demonstrated in multiple different ways through the detailed allegations in Ravgen's FAC.  For example, the prosecution of Defendants' own patent applications demonstrates Defendants' pre-suit awareness of the Patents-in-Suit.  Defendants have been and are assignees of a number of patents and patent applications related to subject matter similar to the Patents-in-Suit and likely became aware of the Patents-in-Suit in researching the patentability of their own patents.  *Id.* ¶ 79.  Additionally, the Patents-in-Suit were specifically cited by both Defendants and patent examiners during the prosecution of at least twenty of Defendants' own patents and applications.  *Id.* ¶¶ 80-84.

Defendants' involvement in proceedings at the Patent Trial and Appeal Board ("PTAB") also demonstrate their pre-suit awareness of the Patents-in-Suit.  Defendants have cited the Patents-in-Suit in at least three different PTAB proceedings dating back to 2013.  *Id.* ¶¶ 85-91.  In each of those proceedings, Defendants asserted at least one of the Patents-in-Suit as invalidating prior art against competitors' patents and advanced substantive arguments regarding the disclosures and inventions in the Patents-in-Suit.  *Id.* ¶¶ 87-88, 90-91.

Defendants' involvement in reexamination proceedings at the United States Patent Office also demonstrate their pre-suit awareness of the Patents-in-Suit.  Ariosa filed a request for

reexamination against a competitor's patent that cited the Patents-in-Suit and their corresponding applications as prior art. *Id.* ¶¶ 92-93. Ariosa advanced substantive arguments regarding the disclosures and inventions in the Patents-in-Suit in that proceeding. *Id.* ¶ 93.

Defendants' communications with Dr. Dhallan and Ravgen regarding Ravgen's technology and patent portfolio also demonstrate their pre-suit awareness of the Patents-in-Suit. Defendants, their employees, their predecessor companies, and their close corporate affiliates communicated with Dr. Dhallan and Ravgen regarding the technology and inventions in the Patents-in-Suit for years, dating back as early as 2009. *Id.* ¶¶ 94-107. Ariosa, its predecessor companies, and its employees—including its CEO and other individuals named on Ariosa patents that cited the Patents-in-Suit during prosecution—communicated with Dr. Dhallan regarding Ravgen's inventive technology and potential opportunities for partnership for years, from at least 2009 through 2012. *Id.* ¶¶ 95-102. Those contacts included multiple in-person meetings between Ariosa and Ravgen, including meetings at both companies' facilities. *Id.* ¶¶ 98, 100. Following Roche's acquisition of Ariosa, at least one Roche representative —a business development vice president for a close affiliate of Defendants within the Roche corporate family—communicated with Dr. Dhallan and Ravgen regarding Ravgen's technology and patent portfolio, including discussions of potential opportunities for asserting Ravgen's patents against competitors. *Id.* ¶¶ 103-107.

Finally, in addition to Defendants' extensive pre-suit awareness, Ravgen's original complaint filed in this matter on December 3, 2020 and a letter sent to Defendants that same day demonstrate Defendants' awareness of the Patents-in-Suit and their infringement. *Id.* ¶¶ 113-114.

Ravgen's FAC states a claim for Defendants' direct infringement of the Patents-in-Suit under 35 U.S.C. § 271(a). For example, Defendants directly infringe through "use" of the Harmony Prenatal Test when they perform the steps of the methods themselves or direct and

control the performance of the method by others, including RMS and RSS directing and controlling Ariosa's activities. *Id.* ¶¶ 124-126, 135-137. Defendants' Motion does not challenge those direct infringement claims.

Ravgen's FAC also states a claim for Defendants' induced infringement under 35 U.S.C. § 271(b). *Id.* ¶¶ 127-128, 138-139. For example, Defendants induce infringement by providing the Harmony Prenatal Test knowing that their "customers, subsidiaries, intermediaries, or agents, including at least Ariosa" will use the test to infringe the Patents-in-Suit. *Id.* ¶¶ 127, 138. In addition to Defendants' extensive knowledge of the Patents-in-Suit outlined above, Ravgen's induced infringement claims are support by Defendants' "creation and dissemination of supporting materials, instructions, product manuals, technical information, and licenses" that instruct the use of the Harmony Prenatal Test in an infringing manner. *Id.*; *see also id.* ¶¶ 58, 60.

## <u>LEGAL STANDARDS</u>

To survive a motion to dismiss, a complaint must plead "enough factual matter" that, taken as true, "state[s] a claim to relief that is ***plausible*** on its face."[2] *Twombly*, 550 U.S. at 570; *see also Iqbal*, 556 U.S. at 678.

"Whoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). To state a claim of induced infringement, a complaint must "contain facts ***plausibly showing*** that [a defendant] specifically intended their customers to infringe [an asserted patent] and knew that the customer's acts constituted infringement." *In re Bill of Lading*, 681 F.3d 1323 at 1339. "This does not mean, however, that [the plaintiff] must prove its case at the pleading stage." *Id.* Knowledge may be established through actual knowledge or willful blindness. *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754, 766 (2011).

---

[2] All emphases herein are added unless otherwise noted.

Where there is willful infringement, 35 U.S.C. § 284 "gives district courts the discretion to award enhanced damages against those guilty of patent infringement." *Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 136 S. Ct. 1923, 1935 (2016). "Knowledge of the patent alleged to be willfully infringed continues to be a prerequisite to enhanced damages." *WBIP, LLC v. Kohler Co.*, 829 F.3d 1317, 1341 (Fed. Cir. 2016). At the pleading stage, Courts have found that "there is no requirement that the plaintiff plead additional facts, beyond knowledge of the patent or patents, in order for a claim of willful infringement to survive a motion to dismiss." *IOENGINE, LLC v. PayPal Holdings, Inc.*, C.A. No. 18-452-WCB, 2019 WL 330515, at *7 (D. Del. Jan. 25, 2019).

## ARGUMENT

Ravgen's FAC sufficiently states claims for induced and willful infringement, including plausibly alleging knowledge of infringement with detailed supporting factual allegations. Defendants' request to dismiss the induced and willful infringement claims rests entirely on the sufficiency of Ravgen's allegations regarding Defendants' knowledge. There is no dispute that Defendants were aware of the Patents-in-Suit for years prior to this case. Defendants completely set aside allegations regarding ***knowledge of the patents*** to argue that they never had ***knowledge of infringement*** because Ravgen never explicitly told Defendants that they were infringing. But Defendants focus on individual allegations to separately dismiss each one on its own as insufficient and improperly ignore the full picture laid out in Ravgen's FAC. The detailed factual allegations in the FAC, viewed collectively and in context with Defendants' years-long awareness of the Patents-in-Suit, plausibly allege knowledge of infringement. Because knowledge is the only alleged pleading deficiency Defendants raise, the Motion should be denied.

## I.   DEFENDANTS DO NOT DISPUTE THAT THEY WERE AWARE OF THE PATENTS-IN-SUIT YEARS BEFORE THIS LAWSUIT.

Ravgen pled substantial facts showing Defendants' knowledge of the Patents-in-Suit and their infringement.   Defendants make unsupportable, overreaching statements throughout the Motion that Ravgen "fail[ed] to plead *any facts*" to support induced and willful infringement claims.  *See, e.g.*, Motion at 3.  Setting the grand statements aside, however, Defendants do not dispute a key fact for Ravgen's claims—Defendants have been aware of the Patents-in-Suit *for years prior to this case*.  Defendants split hairs over what exactly they knew (*e.g.*, by wholly separating knowledge of the patents from knowledge of infringement) and the extent to which they knew it.  But knowledge of the asserted patents is often the threshold question in assessing whether induced and willful infringement are plausibly alleged, and it is the most important stepping stone to knowledge of infringement.  Here there is no dispute over the key fact of Defendants' knowledge of the Patents-in-Suit.  Nor could there be, as Ravgen's FAC explained the multiple avenues that demonstrate Defendants' extensive awareness dating back years.  *See* FAC ¶¶ 76-119.

## II.   RAVGEN PLAUSIBLY ALLEGES DEFENDANTS' KNOWLEDGE THAT ITS GENETIC TEST INFRINGED AND SUPPORTS ITS PLEADING WITH AMPLE FACTUAL ALLEGATIONS.

Ravgen pled detailed factual allegations that, coupled with Defendants' pre-suit knowledge of the Patents-in-Suit, plausibly allege Defendants' knowledge that use of their Harmony Prenatal Test infringed the Patents-in-Suit.  Defendants are sophisticated companies.  Defendants regularly apply for patents in the genetic testing field, assert their own patents in the genetic testing field, and defend against patent infringement claims against their own products in the genetic testing field.  *See* FAC ¶¶ 79, 111, 112.  In view of Defendants' sophistication and litigation activity, Ravgen plausibly alleged that Defendants analyzed (or at the very least should have analyzed) the Patents-in-Suit at some point during Defendants' years-long awareness of the patents and thus had

knowledge of their infringement.  *Id.* ¶¶ 118-119.  Of course, at this stage without any discovery, the facts ultimately bearing on Defendants' conduct "are likely to be, in large measure, in the possession" of Defendants.  *See IOENGINE*, 2019 WL 330515, at *8.  That is why Ravgen is not required to **prove** Defendants' knowledge of infringement at this point, but rather must **plausibly allege** that knowledge.  *In re Bill of Lading*, 681 F.3d at 1339.  Ravgen's FAC meets that standard.

Ravgen's allegations of Defendants' sophistication and knowledge of infringement are far more than threadbare assertions.  Ravgen supported its allegations of Defendants' litigious nature by specifically identifying twenty-three of Defendants' cases in District Court, the Federal Circuit, and the PTAB related to genetic testing patents, including cases involving the same Harmony Prenatal Test accused of infringement in this case.  FAC ¶ 111.  It is more than plausible that Defendants analyzed and became aware that their Harmony Prenatal Test infringed the Patents-in-Suit.  *Id.* ¶¶ 118-119.  Those allegations are particularly strong in view of the years during which Defendants repeatedly cited the Patents-in-Suit during the prosecution of their own genetic testing patents (*id.* ¶¶ 80-84), asserted the Patents-in-Suit as prior art against competitors' genetic testing patents (*id.* ¶¶ 85-93), and engaged in communications with Ravgen regarding the inventive technology claimed in the Patents-in-Suit (*id.* ¶¶ 94-107).  Indeed, analyzing the patents to assess potential infringement is what any responsible company engaging in such activities would do.

Defendants' knowledge of infringement, and the scope of Ravgen's inventions, is highlighted in the years of communications with Ravgen and Dr. Dhallan.  The early contacts necessarily involved considerations of Ravgen's inventions because they involved discussing potential investments or partnerships to develop Ravgen's patented technology.  FAC ¶¶ 95-101.  And the later contacts revolving around Ravgen's patent portfolio again necessarily involved consideration of Ravgen's inventions and the scope of the patents.  *Id.* ¶¶ 104-107.  Even

Defendants' characterization of those communications as being focused on "potentially asserting [the Patents-in-Suit] against a different company" highlights the plausibility that Defendants were assessing the scope and coverage of Ravgen's patents. Combined with Defendants' knowledge of their own products, Defendants' awareness of the Patents-in-Suit and knowledge of the claimed inventions is more than enough to support the plausible inference that Defendants had knowledge of infringement. *See 3Shape A/S v. Align Tech., Inc.*, No. 18-886-LPS-CJB, 2019 WL 1416466 at *2 (D. Del. Mar. 29, 2019) ("[K]nowledge of infringement and specific intent may be inferred based on surrounding circumstances, 'taken collectively and in context,' even where alternate inferences could be drawn.") (quoting *In re Bill of Lading*, 681 F.3d at 1340).

The crux of Defendants' response to their years of knowledge of the Patents-in-Suit and the detailed allegations outlined above is the flawed assertion that Ravgen cannot plead induced or willful infringement because Ravgen never directly accused Defendants of infringement. *See* Motion at 13 ("Ravgen does not allege that it provided any Defendant with notice of the alleged infringement prior to its original complaint…."); *see also id.* at 5, 8. "[T]hat type of explicit pre-suit allegation (while certainly very helpful to a patentee when pleading willful infringement) is not absolutely required in order to demonstrate that an accused infringer 'knew or should have known that what it was doing (and what it continued to do) amounted to infringement of that patent.'" *Sunoco Partners Marketing & Terminals L.P. v. Powder Springs Logistics, LLC*, No. 17-1390-LPS-CJB, 2019 WL 8641303, at *5 (D. Del. Aug. 7, 2019) (quoting *Valinge Innovation AB v. Halstead New England Corp.*, C.A. No. 16-1082-LPS-CJB, 2018 WL 2411218, at *13 (D. Del. May 29, 2018)). Instead, the Court must assess "the totality of the patentee's allegations," and successful knowledge allegations can "come in many different forms." *Valinge*, 2018 WL 2411218, at *13. Thus, even if Ravgen never specifically wrote to Defendants to accuse them of

their infringement, Defendants' sophistication, coupled with their "long-standing, significant insight into the patents-at-issue and the technology articulated therein" supports a plausible inference of knowledge. *Sunoco*, 2019 WL 8641303, at *5.

Defendants' additional arguments improperly assert that individual allegations in the FAC, on their own, are insufficient to show knowledge of infringement, without assessing the content and context of Ravgen's full allegations. *Novozymes North Am., Inc. v. Danisco US Inc.*, No. 1:19-cv-01902-JDW, D.I. 21 at 4 (D. Del. Feb. 12, 2020) ("As an initial matter, the Court need not evaluate whether each allegation, standing alone, gives rise to a reasonable inference that [the defendants] had pre-suit knowledge of the patent. Instead, the Court may consider the allegations as a whole."). For example, Defendants separately pick apart whether their litigious nature, their patent monitoring, Ravgen's other lawsuits against Defendants' competitors, or the allegations in Ravgen's original complaint in this case could individually support knowledge of infringement. *See* Motion at 8-11, 13-14. Those attacks on individual allegations, however, miss the mark because they fail to account for the full context of Ravgen's allegations, and particularly fail to assess them in light of Defendants' undisputed knowledge of the Patents-in-Suit years prior to this case. *See Sunoco*, 2019 WL 8641303, at *5.

Furthermore, Courts have on multiple occasions found allegations similar to Ravgen's FAC to be sufficient for pleading knowledge of infringement. In *Univ. of Mass. Med. Sch. v. L'Oréal S.A.*, the Court found that the plaintiff sufficiently pled the requisite knowledge where, as here, there were citations to the patents-in-suit during prosecution (*see* FAC ¶¶ 80-84) and contact with a co-inventor regarding the patents and patented technology (*see id.* ¶¶ 94-107). No. 17-868-CFC-SRF, 2018 WL 5919745, at *7 (D. Del. Nov. 13, 2018), *report & recommendation adopted*, 2019 WL 2151701 (D. Del. May 17, 2019). And in *Sunoco*, the Court found pleadings sufficient

11

where, as here, defendants were aware of the patents for years prior to the lawsuit (*see supra* Section I), the patents were cited during prosecution (*see* FAC ¶¶ 80-84), and the patent family was discussed during "commercial dealings" through which defendants were familiar with plaintiff and its business (*see id.* ¶¶ 94-107).  *Sunoco*, 2019 WL 8641303, at *5.  Ravgen's FAC, which includes similar allegations and more, beyond those that have previously found to be sufficient, pleads enough for a plausible inference that Defendants had knowledge of infringement.

## III.   RAVGEN PLAUSIBLY ALLEGES INDUCED INFRINGEMENT, INCLUDING DEFENDANTS' KNOWLEDGE OF INFRINGEMENT

Defendants assert that Ravgen's induced infringement claim is deficient only as to knowledge of infringement but improperly ignores nearly all of the allegations in Ravgen's FAC regarding Defendants' knowledge.  *See* Motion at 7.  Defendants focus on individual paragraphs in Ravgen's infringement claims that state how, in view of all other factual allegations in the FAC, the elements of induced infringement are plausibly alleged.  *See* FAC ¶¶ 127, 128, 138, 139, 142, 143.  Defendants call those individual paragraphs "conclusory" or "boilerplate" (Motion at 8), but Defendants ignore the full scope of Ravgen's allegations.  *See In re Bill of Lading*, 681 F.3d 1340 (allegations must be "taken collectively and in context" and "considered as a whole" to assess sufficiency of pleadings).  Specifically, Defendants' dismissal of Ravgen's claims as "boilerplate" fails to address the many paragraphs and pages of detailed pleading regarding the specific facts of this case and Defendants' knowledge, outlined in Sections I and II above.  There could be no confusion that those allegations are relevant to Ravgen's induced infringement claims, as the factual allegations were incorporated by reference into each of Ravgen's claims.  FAC ¶¶ 121, 133.  Defendants' failure to address those allegations—taken collectively and in context to consider Ravgen's pleading as a whole—undermines their Motion.

Defendants attempt to bolster their characterization of Ravgen's allegations as "boilerplate" by citing prior cases purportedly dismissing "conclusory knowledge-of-infringement allegations" but fail because none of Defendants' cited cases is comparable.  *See* Motion at 7-9.  In *SIPCO, LLC v. Streetline, Inc.* (*see* Motion at 7), the complaint at issue, unlike Ravgen's FAC, simply contained "***no facts*** to support the allegation that [defendant] had specific intent to induce infringement."  No. 16-830-RGA, 2018 WL 762335, at *2 (D. Del. Feb. 7, 2018).  The plaintiff's complaint in *Chalumeau Power Sys. LLC v. Alcatel-Lucent* (*see* Motion at 9) alleged that the asserted patent was cited during prosecution of the defendant's patents and that the plaintiff filed a lawsuit against other defendants on the same asserted patent.  No. 11-1175-RGA, 2012 WL 6968938, at *1 (D. Del. July 18, 2012).  But the complaint in *Chalumeau* did not include any facts comparable to Ravgen's allegations regarding Defendants' litigious nature, Defendants' specific litigations in the field of the Patents-in-Suit, Defendants' repeated citation and argument regarding the Patents-in-Suit at the PTAB, and extensive communications with Ravgen and Dr. Dhallan.  Moreover, Defendants' reliance on *CoolTVNetwork.com, Inc. v. Facebook, Inc.*, No. 19-292-LPS-JLH, 2019 WL 4415283 (D. Del. Sept. 16, 2019) (*see* Motion at 10) for the proposition that an induced infringement claim fails where there is no direct pre-suit accusation ignores cases finding that such a direct accusation is not required because knowledge allegations can come in many different forms.  *See, e.g.*, *Sunoco*, 2019 WL 8641303, at *5; *Valinge*, 2018 WL 2411218, at *13.

Defendants also mischaracterize Ravgen's pleading as asserting that "knowledge of infringement must have inevitably followed from knowledge of the Patents-in-Suit" in an attempt to "vitiate what the Federal Circuit and this Court have routinely held to be a separate element required to allege a claim for induced infringement."  Motion at 10.  Ravgen does not allege that knowledge of infringement inevitably follows from knowledge of the Patents-in-Suit.  Rather, all

of Ravgen's factual allegations, taken collectively and in context with Defendants' extensive pre-suit awareness of Ravgen's patents, are sufficient for a plausible inference that Defendants had knowledge of infringement. *See, e.g.*, *3Shape A/S*, 2019 WL 1416466, at \*2; *Univ. of Mass.*, 2018 WL 5919745, at \*7; *Sunoco*, 2019 WL 8641303, at \*5.

In addition to pleading ample facts supporting induced infringement claims, Ravgen pled those claims under the proper legal standard. Defendants excerpt portions of Ravgen's pleading and focus on the allegation that Defendants "should have analyzed[] whether any of their products infringed the Patents-in-Suit" and "should have developed[] an awareness" of infringement to incorrectly assert Ravgen plead an "irrelevant objective standard of knowledge of infringement." Motion at 9. Defendants are incorrect. Ravgen's full allegations from which Defendants excised the "should have" language allege that Defendants "***analyzed***, or at a minimum should have analyzed, whether any of their products infringed the Patents-in-Suit and ***developed***, or at a minimum should have developed, an awareness that they infringed the Patents-in-Suit." FAC ¶ 119. Thus, Ravgen alleged that Defendants actually did analyze and become aware of their infringement. The additional "should have" language Defendants point to is directed to the ***plausibility*** that Defendants knew of their infringement in view of the fact that details of what Defendants actually did are, at this stage without any discovery, wholly in Defendants' control. *See IOENGINE*, 2019 WL 330515, at \*8. But Ravgen is not yet required to ***prove*** that Defendants induced infringement. *In re Bill of* Lading, 681 F.3d at 1339. The plausibility standard at the pleading stage "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" of liability. *Id.* at 1341. Defendants' incorrect assertion to the contrary relies on *Global-Tech Appliances, Inc. v. SEB S.A.*, 563 U.S. 754 (2011), which is inapposite because it dealt with proving indirect infringement for judgment as a matter of law, not the pleading stage.

Furthermore, Defendants argue that even post-suit induced infringement should be dismissed because "Ravgen's filing of its FAC does not change the calculus, for the mere fact of filing an amended complaint, without something more, cannot concert an insufficient allegation of induced infringement into a sufficient one." Motion at 11. Courts in this District have disagreed on multiple occasions. *See, e.g.*, *Grove Digital, Inc. v. Jam City, Inc.*, No. 1:18-cv-01331-RGA, 2019 WL 351254, at *4 (D. Del. Jan. 29, 2019) ("Plaintiff's filing of the Complaint is sufficient to establish the requisite knowledge for post-filing indirect infringement liability."); *IOENGINE*, 2019 WL 330515, at *4; *Malvern Panalytical, Inc. v. TA Instruments-Waters, LLC*, No. 19-2157-RGA, 2020 WL 8225650, at *1 (D. Del. May 5, 2020); *Courtesy Prods., L.L.C. v. Hamilton Beach Brands, Inc.*, 73 F. Supp. 3d 435, 441 (D. Del. 2014). The filing of Ravgen's original complaint is just one more of many facts that support a plausible inference that Defendants had post-suit knowledge of infringement. *See* FAC ¶ 113. Defendants also gained additional post-suit knowledge of infringement through the letter sent to Defendants' in-house counsel the day this lawsuit was filed. *Id.* ¶ 114. Thus, even if the Court were to dismiss pre-suit claims for induced infringement, at a minimum the Court should deny Defendants' Motion as to post-suit claims.

In view of the foregoing, the Court should deny Defendants' Motion regarding Ravgen's induced infringement claims.[3]

---

[3] If the Court were to dismiss the induced infringement claim at this stage, however, Ravgen requests that dismissal be without prejudice and that Ravgen be permitted liberal discovery regarding Defendants' knowledge of the Patents-in-Suit and Defendants' subjective knowledge thereafter. Indeed, without discovery, it can be impossible to have all facts concerning Defendants' subjective knowledge. *IOENGINE*, 2019 WL 330515, at *8.

IV.   **RAVGEN PLAUSIBLY ALLEGES WILLFUL INFRINGEMENT, INCLUDING DEFENDANTS' KNOWLEDGE OF INFRINGEMENT**

Defendants' arguments for Ravgen's willful infringement claims mirror their arguments for Ravgen's induced infringement claims, and they fail for the same reasons.  Defendants once again ignore entire sections of the FAC and mischaracterize Ravgen's willfulness allegations as "simply that '[Defendants] have had knowledge of and notice of the [Patents-in-Suit] and their infringement since at least the launch date of the infringing products,' and that their 'infringement of the [Patents-in-Suit] has been and continues to be, willful and deliberate since at least the launch date of the infringing products.'"  Motion at 12–13 (quoting FAC ¶¶ 129-130, 144-145).  Ravgen pleads ample factual allegations—most of which are entirely ignored by Defendants—that plausibly show Defendants' knowledge of infringement and adequately support Ravgen's claims of willful infringement.  *See supra* Sections I-II; *see also* FAC ¶¶ 76-119.  Those substantial allegations support a plausible inference of Defendants' knowledge of infringement and are sufficient to support Ravgen's willful infringement claims at this stage.  *See, e.g.*, *Sunoco*, 2019 WL 8641303, at *5; *3Shape A/S*, 2019 WL 1416466, at *4.

Moreover, while Defendants again argue that allegations of Defendants' litigation monitoring and "Ravgen's prior litigation activities" are insufficient to support a claim of willful infringement on their own (*see* Motion at 13), Courts in this District have disagreed in the context of willful infringement.  *See Groove Digital*, 2019 WL 351254, at *4 ("The complaint alleges that Jam City 'monitors patent litigation against its competitors' and has therefore been aware of the [asserted patent] since Plaintiff filed suit against [a competitor] . . . . That allegation is not implausible and, if true, would support a claim of willful infringement.").  And in any event, even if the related prior litigations alone are insufficient, Ravgen's allegations must be taken collectively

and in context.  *In re Bill of Lading*, 681 F.3d at 1340.  Ravgen's pleading, considered as a whole, provides ample support for the willful infringement claim.

Defendants again overgeneralize Ravgen's willfulness allegations as mere "conclusory statements" and fail to actually address the substance of Ravgen's FAC.  *See* Motion at 14. Defendants' string citations to a number of inapposite cases in particular do not actually address the specific facts of this case and the detail of Ravgen's FAC.  For example, unlike Ravgen's extensive detail regarding Defendants and their awareness of the Patents-in-Suit, the complaint in *Boston Sci. Corp. v. Nevro Corp.* did not allege ***any facts*** to support the recital that infringement was "reckless, knowing, deliberate, and willful."  415 F. Supp. 3d 482, 495 (D. Del. 2019).  The complaint in *Dynamic Data Techs., LLC v. Brightcove Inc.* similarly failed to allege "***any facts*** establishing [the defendant's] knowledge of infringement."  No. 19-1190-CFC, 2020 WL 4192613, at *5 (D. Del. July 20, 2020).  And the plaintiff in *CG Tech. Dev., LLC v. William Hill U.S. Holdco, Inc.* alleged only one fact to support knowledge of infringement:  one employee of a defendant's subsidiary had knowledge of the plaintiff's patent portfolio five years before the asserted patents were even filed.  404 F. Supp. 3d 842, 852 (D. Del. 2019).  None of those cases is even close to analogous given Ravgen's detailed and specific factual allegations regarding Defendants' knowledge.  *See supra* Section II; *see also* FAC ¶¶ 76-119.

Defendants also repeat the incorrect threat that allowing Ravgen's pleadings to stand would entirely vitiate the "knowledge-of-infringement" requirement.  Motion at 13.  As explained above, Ravgen does not assert that knowledge of infringement must necessarily follow from any knowledge of a patent, and Defendants again ignore the detailed factual allegations in the FAC. Moreover, Defendants cite a recent Federal Circuit case as purportedly "ma[king] clear" that knowledge of infringement is still required for willful infringement (Motion at 13), but Ravgen

has never asserted otherwise.  And the case Defendants cite is not applicable here anyways because it addressed the burden of proof for judgment as a matter of law, not the burden for plausibly alleging willful infringement at the pleading stage.  *See Bayer Healthcare LLC v. Baxalta, Inc.*, 989 F.3d 964 (Fed. Cir. Mar. 1, 2021).  In other words, the Court's holding in *Bayer* that "knowledge of the asserted patent and evidence of infringement is necessary, but not sufficient" to ***prove*** willful infringement does not address what is needed to plead a ***plausible inference*** of willful infringement.  *See id.* at 988.

Defendants also incorrectly argue that ***post-suit*** willful infringement must be dismissed because Ravgen "fails to allege any facts sufficiently showing that [Defendants] knew of the alleged infringement as of the time of the original complaint's filing."  Motion at 14.  Courts in this District have rejected that argument previously.  *See IOENGINE*, 2019 WL 330515, at *7. But while Ravgen's original complaint and concurrent letter to Defendants regarding their infringement surely put Defendants on notice, *see* FAC ¶¶ 113, 114, those are just two more facts in the substantial collection of allegations showing Defendants' knowledge of infringement. Moreover, Ravgen's letter to Defendants identifying Defendants' infringement and attaching the original complaint provides additional evidence of ***post-suit*** knowledge that further militates against dismissing a post-suit willfulness claim.  FAC ¶ 114; FAC Ex. 82.  Despite acknowledging that letter (Motion at 5-6), Defendants do not address it in their arguments for dismissal of Ravgen's post-suit willful infringement claim.  Ravgen's letter, in addition to giving Defendants notice of infringement, indicated that Ravgen would "prefer to resolve the matter amicably through discussions" and invited a meeting "to discuss licensing terms for the patents in Ravgen's portfolio."  FAC Ex. 82 at 1.  Defendants' conduct after receiving that letter—and particularly the lack of any response to the invitation to discuss amicable resolutions—is a factor that the jury

should be allowed to consider in evaluating whether Defendants' ongoing infringement is willful. To date, Defendants have declined to engage in any conversation about their infringement or potential licensing.  The jury should be permitted to consider Defendants' ongoing refusal to engage or to explain why, in their view, a license to Ravgen's patents might not be needed. Ravgen's offer for such a conversation, and Defendants' silence in response, is an additional differentiator from other cases that further supports a post-suit willful infringement claim.

In view of the foregoing, the Court should deny Defendants' Motion regarding Ravgen's willful infringement claims.[4]

## V.    CONCLUSION

For the foregoing reasons, Ravgen respectfully requests that this Court deny Defendants' Motion.

---

[4] If the Court were to dismiss the willful infringement claim at this stage, however, Ravgen requests that dismissal be without prejudice and that Ravgen be permitted liberal discovery regarding Defendants' knowledge of the Patents-in-Suit and Defendants' subjective knowledge thereafter. Indeed, without discovery, it can be impossible to have all facts concerning Defendants' subjective knowledge.  *IOENGINE*, 2019 WL 330515, at *8.

Dated: April 12, 2021

Respectfully submitted,

FARNAN LLP

/s/ Michael J. Farnan
Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
919 N. Market St., 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

John M. Desmarais (admitted *pro hac vice*)
Kerri-Ann Limbeek (admitted *pro hac vice*)
Jamie L. Kringstein (admitted *pro hac vice*)
Brian D. Matty (admitted *pro hac vice*)
Michael Ling (admitted *pro hac vice*)
Deborah J. Mariottini (admitted *pro hac vice*)
DESMARAIS LLP
230 Park Avenue
New York, NY 10169
Telephone: 212-351-3400
Facsimile: 212-351-3401
jdesmarais@desmaraisllp.com
klimbeek@desmaraisllp.com
jkringstein@desmaraisllp.com
bmatty@desmaraisllp.com
mling@desmaraisllp.com
dmariottini@desmaraisllp.com

*Attorneys for Plaintiff Ravgen, Inc.*