IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| RAVGEN, INC., <br><br> Plaintiff, <br><br> v. <br><br> ARIOSA DIAGNOSTICS, INC., ROCHE SEQUENCING SOLUTIONS, INC., AND ROCHE MOLECULAR SYSTEMS, INC., <br><br> Defendants. | Civil Action No. 20-cv-1646-RGA-JLH <br><br> **JURY TRIAL DEMANDED** |
| RAVGEN, INC., <br><br> Plaintiff, <br><br> v. <br><br> BIORA THERAPEUTICS, INC., <br><br> Defendant. | Civil Action No. 20-cv-1734-RGA-JLH <br><br> **JURY TRIAL DEMANDED** |

### PLAINTIFF'S OPENING DISCOVERY DISPUTE LETTER

Dated: November 2, 2023

John M. Desmarais (*pro hac vice*)
Kerri-Ann Limbeek (*pro hac vice*)
Brian D. Matty (*pro hac vice*)
Jamie L. Kringstein (*pro hac vice*)
Kyle G. Petrie (*pro hac vice*)
Joze Welsh (*pro hac vice*)
Jun Tong (*pro hac vice*)
Deborah J. Mariottini *(pro hac vice)*
Peter Zhu (*pro hac vice*)
Benjamin N. Luehrs (*pro hac vice*)
Frederick J. Ding (*pro hac vice*)
Julianne M. Thomsen (*pro hac vice*)
William Benjamin Nichols (*pro hac vice*)
**DESMARAIS LLP**
230 Park Avenue
New York, NY 10169

Brian E. Farnan (Bar No. 4089)
Michael J. Farnan (Bar No. 5165)
FARNAN LLP
919 N. Market St., 12th Floor
Wilmington, DE 19801
Telephone: (302) 777-0300
Facsimile: (302) 777-0301
bfarnan@farnanlaw.com
mfarnan@farnanlaw.com

*Attorneys for Plaintiff Ravgen, Inc.*

Dear Judge Hall:

Ravgen Inc. ("Ravgen") submits this discovery dispute letter concerning Ariosa Diagnostics, Inc., Roche Sequencing Solutions, Inc., Roche Molecular Systems, Inc., ("Roche") and Biora Therapeutics, Inc.'s ("Biora") (collectively, "Defendants") refusal to produce an October 2021 agreement (the "October 2021 Agreement") between Defendants' counsel ("WilmerHale") and third-party fact witness Wolfgang Holzgreve, which is one of a number of agreements WilmerHale has signed to pay Dr. Holzgreve as a fact witness against Ravgen.

WilmerHale has paid Dr. Holzgreve—a third-party fact witness who claims to be unbiased and disinterested in these litigations—tens of thousands of dollars to work with WilmerHale against Ravgen in four different litigations. *See, e.g.*, Exs. 1, 2. Defendants are currently paying Dr. Holzgreve $550 per hour for his involvement in these cases—a staggering ▇▇▇ per hour more than ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Ex. 3 at 232:18-233:4; *see also id.* at 112:13–18 ("Q. And in this agreement, WilmerHale and Quest were paying you . . . to consult with them on their defenses, right? [A.] To provide firsthand factual information."). Since October 2021, WilmerHale has signed at least five different agreements with Dr. Holzgreve. The four agreements that Defendants have produced include unexplained changes in language and terms, and an increase in payment when re-engaging in the later cases, including those pending in this Court. Exs. 4-7. For example, in April 2022 WilmerHale engaged Dr. Holzgreve at $465 per hour for their client Quest, stating that was his "customary rate" (Ex. 4 at 1), but then in December 2022, only months later, engaged Dr. Holzgreve again for Defendant Roche, inexplicably raising his "customary rate" to $550 per hour. Ex. 5 at 1. This is clearly something more than just the reasonable compensation for lost time spent testifying. Further, the April 2022 Agreement with Dr. Holzgreve states that it is "an addendum" to the October 2021 Agreement Ravgen is seeking here. Ex. 4 at 1. Ravgen seeks the remaining unproduced October 2021 Agreement to discover the full picture.

Defendants have claimed that the October 2021 Agreement is protected work product. Defendants have not explained a proper basis for their work product claim over an entire agreement with a third-party fact witness, and the Court should order production. But even if a colorable work product claim did exist, the Court should order production to permit discovery into the full story regarding Dr. Holzgreve's close ties with—and any resulting bias towards—Defendants.

**1. All Agreements To Pay Dr. Holzgreve Must Be Disclosed.**

Agreements to pay fact witnesses must be disclosed to permit full examination at trial. *See e.g.*, *Goldstein v. Exxon Rsch. & Eng'g Co.*, 1997 WL 580599, at *9 (D.N.J. Feb. 28, 1997) (stating that the "consistent appellate rulings in civil and criminal cases that the appropriate relief [when a fact witness is being paid] is to require full disclosure of the arrangements and permit full examination at trial.")

Defendants' payments to Dr. Holzgreve raise serious questions. For example, Dr. Holzgreve testified that he understands his payments to be for "consulting services" as an "expert" and "factual information," not "reasonable expenses incurred by a witness to attend the trial" or "reasonable compensation for the loss of the witness's time in attending the trial to testify." *Rocheux Int'l of New Jersey v. U.S. Merchants Fin. Grp., Inc.*, 2009 WL 3246837, at *3 (D.N.J.

Oct. 5, 2009); Ex. 3 at 111:9-113:1. And the reasonableness of Dr. Holzgreve's payments are highly questionable: as described above, WilmerHale is paying Dr. Holzgreve ▇ more per hour for his testimony as a fact witness than Dr. Holzgreve receives for ▇ ▇ Ex. 3 at 232:18-233:4 (Q. Do you think your testimony as a fact witness in this case is worth ▇ more per hour than ▇ ▇ ? A. Yes, that is my assessment). Indeed, the court in *Rocheux* **excluded** a fact witness's testimony when the witness was paid as little as $1,500 for attending a deposition, while Dr. Holzgreve here testified he billed around $6000 for a first deposition and was going to be paid another $7500 for his second deposition. *See* 2009 WL 3246837, at *4; Ex. 3 at 143:23-144:3; 287:17-24. And in addition to just testifying, Dr. Holzgreve has been paid to meet with WilmerHale attorneys ***at least thirty times***. Ex. 3 at 148:9-14; Exs. 1,2. Defendants' extensive payments to Dr. Holzgreve raise serious questions, and the October 2021 Agreement must be produced so that Ravgen "has the opportunity to explore the agreement and [Dr. Holzgreve's] credibility through cross-examination." *Goldstein*, 1997 WL 580599, at *7.

Even if Defendants could support their claim of work product—they cannot—Ravgen has a "substantial need for the materials" and "cannot, without undue hardship, obtain their substantial equivalent by other means[.]" Fed. R. Civ. P. 26(b)(3); *see also*, *In re Cendant Corp. Sec. Litig.*, 343 F.3d 658, 663 (3d Cir. 2003) ("[W]ork prepared in anticipation of litigation . . . is discoverable only upon a showing of need and hardship."). The changing terms and conditions under which Defendants have paid Dr. Holzgreve tens of thousands of dollars to testify on their behalf is directly relevant to his credibility at trial. *See e.g.*, *Goldstein*, 1997 WL 580599, at *7-9; *City of Almaty, Kazakhstan v. Ablyazov*, 2018 WL 11270087, at *6 (S.D.N.Y. Dec. 3, 2018); *State of N.Y. v. Solvent Chem. Co.*, 166 F.R.D. 284, 289 (W.D.N.Y. 1996) (finding payments to fact witnesses relevant to bias). The Court should order production of the October 2021 Agreement for a full and fair assessment of Dr. Holzgreve's bias, particularly in light of the discrepancies in Defendants' disclosed agreements. *See Elm 3DS Innovations, LLC v. Samsung Elecs., Ltd.*, 1:14-cv-01430-LPS-JLH, D.I. 442 at 12 (D. Del. Oct. 15, 2021). Further, because Defendants are the only ones in possession of the October 2021 Agreement, Ravgen cannot obtain its equivalent by other means.

### 2. The Rare And Exceptional Circumstances Of This Case Justify A Waiver Of Work-Product Protection Over Even "Core" Work Product.

As an initial matter, it is difficult to understand how the October 2021 Agreement with a third-party fact witness could possibly contain "core" work product. *See Solvent*, 166 F.R.D. at 290 ("The court is at a loss as to why [Defendant] would incorporate such sensitive information [as the thoughts and mental impressions of counsel] in a written agreement with an important fact witness," knowing that the agreement would be sought in discovery.) But even if it did, production would still be warranted in these circumstances. While "opinion work product protection is not absolute, [it] requires a heightened showing of extraordinary circumstances" or "rare and exceptional circumstances." *E.g.*, *FinancialApps, LLC v. Envestnet, Inc.*, 2023 WL 1437809, at *7 (D. Del. Jan. 31, 2023). The Third Circuit has not articulated a more specific test for these circumstances. *Id*. at *8. However, in *Town of Georgetown v. David A. Bramble, Inc.*, the court ordered an in-camera review of alleged work product in light of "the risk [] that the work-product doctrine can be manipulated to shield from discovery relevant documents and testimony," citing *Solvent*, 166 F.R.D. at 290. 186 F. Supp. 3d 329, 332 n.1 (D. Del. 2016). WilmerHale's extensive engagement with Dr. Holzgreve against Ravgen merits consideration under such a standard.

2

In *Solvent*, the court ordered production of a similar agreement because the "impropriety of [Defendant's] conduct in relation to [paying a third-party fact witness] dictate[] that the company must forfeit any protection that it might otherwise claim to such information." 166 F.R.D. 284 at 290. The *Solvent* court cited: 1) the fact that payments to the witness were "a means of . . . securing his testimony."; 2) the importance of the witness to Defendants' case; 3) the suspicious timing of retention and payments; 4) the Defendants failure to voluntarily disclose their agreement; and 5) the Defendants' "strong resistance" to producing the agreement. *Id* at 289-291.

The same factors are met here. First, Defendants are paying Dr. Holzgreve tens of thousands of dollars, at a rate of $550 per hour, to secure his testimony. Ex. 3 at 241:13-16: "Is $550 per hour the minimum that you will accept to come to the U.S. and testify at trial? A. You could call it that way, but I would also call it appropriate."); *see also id.* at 219:10-21; 221:3-24. Second, WilmerHale, who have engaged Dr. Holzgreve to testify in **four separate cases** against Ravgen, clearly believe that Dr. Holzgreve is an important witness. Third, given the October 2021 date on WilmerHale's first engagement with Dr. Holzgreve, WilmerHale had identified Dr. Holzgreve as an important witness early in their investigation. Curiously, WilmerHale did not even disclose Dr. Holzgreve as a relevant witness until just 33 days before the end of fact discovery in the *Quest* case in which he was first engaged, then withheld their agreements with him for months, and then withheld his invoices revealing the extent of his payments until the eve of trial. *See, e.g.*, Ex. 8 at 4-5. Additionally, raising further concerns around the nature and timing of his payments is the fact that Dr. Holzgreve has only produced **two redacted invoices** from **at least thirty meetings** with WilmerHale attorneys despite having agreements dating back to October 2021. Exs. 1-2. Fourth, at his **May 2022** deposition in *Quest*, Dr. Holzgreve testified that he had only signed a general agreement with WilmerHale and he did not yet know his exact compensation. Ex. 9 at 25:20-31:9. The existence of the **October 2021** Agreement casts significant doubt on that testimony. Fifth, Defendants' "strong resistance" to the production of the October 2021 Agreement is the reason for the instant motion.

Notably, Dr. Holzgreve is not the only fact witness being paid. Defendants have engaged at least four additional third-party fact witnesses to testify across these two cases at rates up to a staggering $950 per hour—merely for testifying as supposed unbiased fact witnesses. Ex. 3 at 264:12-15; *see also, e.g.*, Exs. 10, 11. The October 2021 Agreement, one of the earliest such agreements, will shed light on the full scope of Defendants' extensive engagement with and preparation of "third-party" witnesses in these cases.

WilmerHale's extensive financial arrangements with Dr. Holzgreve does not deserve work product protection. Ravgen respectfully requests that the Court order Defendants to produce the October 2021 Agreement.

Respectfully submitted,

/s/ Michael J. Farnan

Michael J. Farnan

cc: Counsel of Record (Via E-Mail)

3